**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS**

| | | |
|---|---|---|
| **EDWARD F. BRENNAN,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | **CIVIL NO. 10-517-GPM** |
| | ) | |
| **JAMES S. CONNORS,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## MEMORANDUM AND ORDER

**MURPHY, District Judge:**

### I. INTRODUCTION

This matter is before the Court on a motion to dismiss or, in the alternative, for summary judgment brought by Defendant James S. Connors (Doc. 10). This case is the successor to a long-running state court lawsuit between Connors and Edward F. Brennan. A little history is helpful. In 1992, Brennan, an attorney in partnership with attorneys Michael B. Constance and Judy L. Cates in the firm of Brennan, Cates & Constance, P.C. ("BCC"), in Belleville, Illinois, agreed to represent Connors, the internationally-known tennis star. In 1997, BCC dissolved. The following year Brennan brought suit against Connors in the Circuit Court of the Twentieth Judicial Circuit, St. Clair County, Illinois, claiming that Connors breached his representation agreement with him by failing to transfer to Brennan some 458,333 shares in the Argosy Gaming Company ("Argosy") worth approximately $65 million. In 2009, Connors settled Brennan's lawsuit for an unknown amount that Connors suggests was eight figures. The settlement agreement includes mutual promises to indemnify and hold the other harmless from certain claims (the exact terms of the indemnification agreement will be discussed in more detail presently).

Page 1 of  12

Next, in 2010, Constance, Brennan's former law partner, sued Brennan in the St. Clair County circuit court, claiming that Connors had attempted to transfer the Argosy shares to Brennan in 1997 before the dissolution of BCC, but that Brennan deliberately refused to accept the shares in order to conceal the transaction from his law partners.  He casts his claims as fraud and breach of fiduciary duty and seeks compensatory and punitive damages.  The case, *Constance v. Brennan*, was then removed by Brennan to this Court, asserting subject matter jurisdiction on the basis of diversity of citizenship under 28 U.S.C. § 1332.  Shortly after *Constance v. Brennan* was removed, this case was filed as a separate action in this Court also under the diversity jurisdiction.

Brennan asserts in this case that if he is held liable to Constance in *Constance v. Brennan*, he gets indemnification from Connors pursuant to their 2009 settlement agreement.  Before this case was filed, the Court's staff was informed that Brennan's counsel wanted to file this indemnification case separate from *Constance v. Brennan*.  Brennan was instructed to bring his claim for indemnity as a third-party claim in *Constance v. Brennan* as any separate suit would be consolidated with *Constance v. Brennan*.  Unfortunately Brennan's counsel ignored these instructions and filed a separate indemnity action that was then consolidated with *Constance v. Brennan*. The Court realigned the parties according to their proper roles in the litigation, with Constance as plaintiff, Brennan as defendant and Connors as third-party defendant.

Following the consolidation, the Court remanded *Constance v. Brennan* to state court for lack of federal subject matter jurisdiction because there was not complete diversity of citizenship between Constance and Brennan—both are Illinois citizens.  At that time, this case was severed from *Constance v. Brennan*  because there is complete diversity as to Brennan's claim for indemnity against Connors.  Brennan was ordered to show cause why this case should not be dismissed

pursuant to the familiar principle of Illinois law that contracts of indemnity for intentional misconduct are void as against public policy.  Connors then filed a motion to dismiss or, in the alternative, for summary judgment.  Brennan responded, the Court discharged the order to show cause, and Brennan responded to Connors's motion.  Having considered the matter carefully, the Court rules as follows.

## II. DISCUSSION

As an initial matter, the Court notes the standard under which it must evaluate a motion to dismiss for failure to state a claim upon which relief can be granted.  In considering such a motion, the Court accepts all well-pleaded allegations in a plaintiff's complaint as true.  *See* Fed. R. Civ. P. 12(b)(6); *Cleveland v. Rotman*, 297 F.3d 569, 571 (7th Cir. 2002); *Whitwell v. Wal-Mart Stores, Inc.*, Civil No. 09-513-GPM, 2009 WL 4894575, at *2 (S.D. Ill. Dec. 11, 2009); *S.C. Johnson & Son, Inc. v. Buske*, Civil No. 09-286-GPM, 2009 WL 3010833, at *8 (S.D. Ill. Sept. 17, 2009).  The purpose of a Rule 12(b)(6) motion is to decide the adequacy of the complaint, not to determine the merits of the case.  *See Gibson v. City of Chicago*, 910 F.2d 1510, 1520 (7th Cir. 1990); *Morrison v. YTB Int'l, Inc.*, 641 F. Supp. 2d 768, 773 (S.D. Ill. 2009); *Brown v. SBC Commc'ns, Inc.*, No. 05-cv-777-JPG, 2007 WL 684133, at *2 (S.D. Ill. Mar. 1, 2007). A complaint should not be dismissed unless it either fails to provide adequate notice–as has been required consistently under Rule 8 of the Federal Rules of Civil Procedure–or does not contain "enough facts to state a claim to relief that is plausible on its face," that is, the claim has not been "nudged…across the line from conceivable to plausible[.]"  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  *See also Airborne Beepers & Video, Inc. v. AT & T Mobility LLC*, 499 F.3d 663, 667 (7th Cir. 2007).  "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does

not need detailed factual allegations, a plaintiff's obligation to provide the…grounds…of his…entitlement  to relief…requires more than labels and conclusions, and a formulaic recitation of a cause of action's elements will not do[.]" *James v. Illinois Sexually Dangerous Persons Act*, Civil No. 09-40-GPM, 2009 WL 2567910, at *2 (S.D. Ill. Aug. 19, 2009) (quoting *Bell Atl. Corp.*, 550 U.S. at 555).

Because, as noted, the purpose of a motion to dismiss for failure to state a claim upon which relief can be granted is merely to test the legal sufficiency of the allegations of a complaint, a court may not consider matters outside the pleadings in evaluating such a motion without converting the motion to one for summary judgment. *See* Fed. R. Civ. P. 12(d); *188 LLC v. Trinity Indus., Inc.*, 300 F.3d 730, 735 (7th Cir. 2002); *Cynthia L. Holmes, P.C. v. Back Doctors, Ltd.*, Civil No. 09-540-GPM, 2009 WL 2930634, at *1 (S.D. Ill. Sept. 10, 2009).  However, in deciding a Rule 12(b)(6) motion, the Court can treat as part of the pleadings documents that are "referred to in the plaintiff's complaint and are central to [the plaintiff's] claim." *Wright v. Associated Ins. Cos.*, 29 F.3d 1244, 1248 (7th Cir. 1994).  *See also Rosenblum v. Travelbyus.com Ltd.*, 299 F.3d 657, 661 (7th Cir. 2002); *Venture Assocs. Corp. v. Zenith Data Sys. Corp.*, 987 F.2d 429, 431 (7th Cir. 1993). Additionally, it is well settled that in deciding a Rule 12(b)(6) motion a court may take judicial notice of matters of public record, including court documents.  *See 4901 Corp. v. Town of Cicero*, 220 F.3d 522, 527 n.4 (7th Cir. 2000); *Anderson v. Simon*, 217 F.3d 472, 474-75 (7th Cir. 2000); *General Elec. Capital Corp. v. Lease Resolution Corp.*, 128 F.3d 1074, 1080-81 (7th Cir. 1997); *Henson v. CSC Credit Servs.*, 29 F.3d 280, 284 (7th Cir. 1994).  In this instance, the indemnification agreement between Brennan and Connors is, in addition to being referred to in Brennan's complaint and central to his claim, attached to his complaint and therefore properly within the scope of review

on a motion to dismiss.  *See* Fed. R. Civ. P. 10; *Tierney v. Vahle*, 304 F.3d 734, 738 (7th Cir. 2002)

(citing *Beanstalk Group, Inc. v. AM Gen. Corp*., 283 F.3d 856, 858 (7th Cir. 2002)).  Also, the Court

can judicially notice the history of previous litigation between Brennan and Connors, as well as the

related litigation between Constance and Brennan (indeed, as already has been discussed, the lawsuit

between Constance and Brennan was for a time pending before the undersigned district judge on

removal).  Accordingly, it is unnecessary to construe Connors's motion as a motion for summary

judgment, and the Court will instead treat Connors's motion as a motion to dismiss for failure to

state a claim upon which relief can be granted, brought pursuant to Rule 12(b)(6).  With the

foregoing standard for evaluating a Rule 12(b)(6) motion in mind, then, the Court turns to

consideration of Connors's motion to dismiss.

      Brennan seeks indemnification from Connors pursuant to a clause in their 2009 settlement

agreement.  The provision at issue, which is the fifth paragraph of the settlement agreement, entitled

"Indemnity-Hold Harmless," provides in relevant part:

> The Plaintiffs further declare that they will hold harmless and indemnify the
> Defendants from any and all costs, fees, liabilities and losses which might be
> incurred by Defendant indemnitees as a result of any outstanding liens, or any other
> claims by any other party, including, but not limited to, claims by former partners or
> shareholders or any current partner or shareholder regarding the contract referenced
> in the Complaint or rights of reimbursements arising out of the allegations in
> Plaintiffs' Complaint.  Defendants further declare that they will hold harmless and
> indemnify the Plaintiffs from any and all costs, fees, including any liabilities and
> losses which might be incurred by Plaintiff indemnitees as a result of any outstanding
> liens, or any other claims by any other party, including, but not limited to, claims by
> former partners or shareholders or any current partner or shareholder, regarding the
> contract referenced in the Complaint or rights of reimbursement arising out of
> Defendants' Counterclaims or Affirmative Defenses.

Doc. 2-2 at 3 ¶ 5.  In the first prolix sentence above, Brennan promises to indemnify Connors for

"any other claims by any other party…claims by former partners" In the second equally prolix

sentence, Connors promises the same cover to Brennan. The two sentences together are marvelously ineffectual and leave the parties where they started. The second sentence seems to authorize Brennan's indemnity action–but Brennan promised in the first sentence to hold Connors harmless from all claims or rights of reimbursement arising out of the allegations in Plaintiffs complaint (*Brennan v. Connors*).  So, Connors and Brennan, insofar as indemnity is concerned, are locked in an infinitely repeating loop: Constance sues Brennan; Brennan, (under the second sentence) sues Conners; Conners (under the first sentence) must be held harmless by Brennan for claims by Brennan and Constance.  The indemnity provision itself is impotent and a non-starter. And there is another problem with this claim for indemnity.

The Illinois decisions are adamant that parties may not contract to indemnify intentional misconduct, although Illinois law does not prohibit agreements to insure for harm caused by intentional misconduct if the beneficiary of such an agreement is not the actual wrongdoer.  *See Dixon Distrib. Co. v. Hanover Ins. Co.*, 641 N.E.2d 395, 401 (Ill. 1994) (citing *University of Ill. v. Continental Cas. Co.*, 599 N.E.2d 1338, 1351 (Ill. App. Ct. 1992)).

This Court is a federal court sitting in diversity jurisdiction.  Because a federal court lacks constitutional authority to fashion a broad body of common law, it is constrained to apply the law of the state where it sits as pronounced by that state's highest courts as the rule of decision in all cases save those where a countervailing federal interest mandates the application of federal law.  *See Commissioner v. Estate of Bosh, 387 U.S. 456 (1967)*. Brennan clearly is asserting a right to be indemnified for deliberate and intentional breaches of the fiduciary duties he owed to Constance and he wants to be indemnified for actual and any punitive damages assessed against him for breaching those duties.

He argues that it is not against public policy for parties to agree to give indemnity for intentional misconduct that occurred before the time of contracting, relying on a line of cases from outside Illinois. These cases hold that, as a matter of freedom of contract, parties can contract to indemnify one another for past misconduct, though not for future misconduct. *See Katun Corp. v. Clarke*, 484 F.3d 972, 976-78 (8th Cir. 2007) (under Minnesota law, a settlement agreement allegedly resolving disputed indemnification claims asserted by a corporation and its parent company against the corporation's former shareholders based on alleged prior illegal conduct by the corporation pursuant to an indemnification provision in the parties' merger agreement when the parent company acquired the corporation was not void as a matter of public policy); *Loscher v. Hudson*, 182 P.3d 25, 34 (Kan. Ct. App. 2008) ("Unless an indemnity agreement encourages the commission of the illegal act, a contract to indemnify *against the consequences of an illegal act that has already been committed* has generally been upheld.") (emphasis in original); *Kreter v. HealthSTAR Commc'ns, Inc.*, 914 A.2d 168, 181 (Md. Ct. Spec. App. 2007) (an indemnification agreement between an ex-wife and a company that purchased the stock of companies owned by the ex-wife and her ex-husband, which agreement indemnified the company from any litigation brought by the ex-husband in connection with a fraudulent payment made to the ex-wife for the purchase of her stock, was not void as against public policy, as the agreement constituted a legitimate business decision between the company and the ex-wife to decide between them who would ultimately pay in the event the ex-husband successfully sued them, and the agreement did not hurt the ex-husband or harm the public); *Brown v. Gallagher*, 902 N.E.2d 1037, 1040 (Ohio Ct. App. 2008) (quoting *Feuer v. Menkes Feuer, Inc.*, 187 N.Y.S.2d 116, 120 (N.Y. App. Div. 1959)) ("[O]ne may make an agreement to be indemnified or to indemnify with respect to a crime or illegal act which occurred

prior to the making of the agreement.  This has been the law for many years throughout the United States and in this State."); *Oxy USA, Inc. v. Southwestern Energy Prod. Co*., 161 S.W.3d 277, 286-87 (Tex. App. 2005) (an indemnity agreement executed by two oil and gas companies releasing one company from liability for intentional tort claims arising out of a seismic survey project did not violate public policy, where the agreement was limited to actions that had already occurred).  Here, Brennan argues, he is seeking indemnification for alleged breaches of his fiduciary duty to Constance that occurred long before Brennan and Connors entered their contract for indemnity, and thus the indemnity contract is not against public policy.

The problem with this argument is the Court is constrained to apply the law of Illinois.  Had this indemnity claim been filed in the underlying action it would have gone back to state court where the courts are more at liberty to innovate. *Commissioner v. Estate of Bosch*, 387 U.S. 456, 464-65 (1967); *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 77-78 (1938); *In re Rhone-Poulenc Rorer, Inc*., 51 F.3d 1293, 1300 (7th Cir. 1995); *Wainwright Bank v. Railroadmens Fed. Savs. & Loan Ass'n of Indianapolis*, 806 F.2d 146, 149-50 (7th Cir. 1986); *Gasbarra v. Park-Ohio Indus., Inc*., 655 F.2d 119, 122 (7th Cir. 1981).  In other words, a federal court's power to pronounce state law is not a power at all or, if it is, it is, so to say, a negative power that arises from the fact that federal courts, as courts of limited jurisdiction, lack the authority of common-law courts to fashion broad bodies of law. *See City of Milwaukee v. Illinois & Mich*., 451 U.S. 304, 334 (1981) (Blackmun, J., dissenting) ("*Erie* made clear that federal courts, as courts of limited jurisdiction, lack general power to formulate and impose their own rules of decision. "); *United States v. Hudson*, 11 U.S. (7 Cranch) 32, 33 (1812) ("Of all the Courts which the United States may, under their general powers, constitute, one only, the Supreme Court, possesses jurisdiction derived immediately from the

constitution, and of which the legislative power cannot deprive it.  All other Courts created by the general Government possess no jurisdiction but what is given them by the power that creates them, and can be vested with none but what the power ceded to the general Government will authorize them to confer.").

Consistent with the principle that the authority of federal courts to apply state law stems from the strict limitations of their jurisdiction, a federal court is expected to apply state law in a narrow way.  This Court is extremely mindful of the many admonitions by the United States Court of Appeals for the Seventh Circuit on this point.  In general, federal courts should not "speculate on any trends in state law." *Shaw v. Republic Drill Corp.*, 810 F.2d 149, 150 (7th Cir. 1987) (citing *Trembath v. St. Regis Paper Co.*, 753 F.2d 603, 605 (7th Cir. 1985)).  "Respect for state courts as the primary expositors of state law counsels restraint by federal court in announcing new state law principles[.]"  *Gust K. Newberg Constr. Co. v. E.H. Crump & Co.*, 818 F.2d 1363, 1368 (7th Cir. 1987) (citing *Grubb v. W.A. Foote Mem'l Hosp., Inc.*, 741 F.2d 1486, 1500 (6th Cir. 1984), *vacated on other grounds*, 759 F.2d 546 (6th Cir. 1985)).  Correspondingly, "[i]t is not [the] province [of] a federal…court to fashion for Illinois what we are certain many would say was a wise and progressive social policy." *Loucks v. Star City Glass Co.*, 551 F.2d 745, 746 (7th Cir. 1977).  Similarly, "[f]ederal court is not the place to press innovative theories of state law."  *Villegas v. Princeton Farms, Inc.*, 893 F.2d 919, 925 (7th Cir. 1990) (quoting *Anderson v. Marathon Petroleum Co.*, 801 F.2d 936, 942 (7th Cir. 1986)).  In general, plaintiffs asserting novel theories of state law "must come forward with some authority to support their view that they have a right to the relief they seek," given that federal courts "have 'limited discretion…with respect to untested legal theories brought under the rubric of state law.'"  *Pisciotta v. Old Nat'l Bancorp*, 499 F.3d 629, 635

(7th Cir. 2007) (quoting *A.W. Huss Co. v. Continental Cas. Co*., 735 F.2d 246, 253 (7th Cir. 1984)) (emphasis omitted).  Moreover, a federal court should "not anticipate changes to state law in the absence of concrete evidence that the state court would adopt that position today." *Hollander v. Brown*, 457 F.3d 688, 692 (7th Cir. 2006).  Additionally, when the court is "presented…with two opposing, yet equally plausible interpretations of state law, it is well established that, for reasons of federalism and comity, 'we generally choose the narrower interpretation which restricts liability, rather than the more expansive interpretation which creates substantially more liability.'" *Southern Ill. Riverboat Casino Cruises, Inc. v. Triangle Insulation & Sheet Metal Co*., 302 F.3d 667, 676 (7th Cir. 2002) (quoting *Home Valu, Inc. v. Pep Boys*, 213 F.3d 960, 963 (7th Cir. 2000)).

In this instance the Court is asked to innovate.  The Illinois courts are clear that parties cannot contract for indemnity for intentional acts, and the decision about whether an exception to this rule should be crafted for agreements to indemnify intentional misconduct that occurred before the time of contracting is one that should be made by an Illinois state court, not by a federal court sitting in diversity jurisdiction.

Because agreements to indemnify a person for his or her own misconduct are both unusual and disfavored at law, courts typically require such an agreement to contain language specifically stating that the agreement is intended to cover such conduct.  "[I]t is quite generally held that an indemnity contract will not be construed as indemnifying one against his own [misconduct], unless such a construction is required by clear and explicit language of the contract…or such intention is expressed in unequivocal terms." *Buenz v. Frontline Transp. Co*., 882 N.E.2d 525, 529 (Ill. 2008) (quoting *Westinghouse Elec. Elevator Co. v. La Salle Monroe Bldg. Corp*., 70 N.E.2d 604, 607

(Ill. 1947)).  This is because, while the purpose of an insurance contract is to insure against the risks that are not excluded by the policy terms, persons entering an indemnity agreement are entitled to know with some precision the risks for which they are agreeing to pay.  *See Ervin v. Sears, Roebuck & Co.*, 469 N.E.2d 243, 249 (Ill. App. Ct. 1984) (quoting *Kinnan v. Charles B. Hurst Co.*, 148 N.E. 12, 14 (Ill. 1925)) ("As noted by our supreme court long ago, an insurance company's agreement to defend actions against the insured is one of the 'fundamental obligations' of the insurance contract; in contrast, the agreement to defend and indemnify in a contract of the type between [two businessmen] is incidental to the main purpose of the agreement[.]").  *Cf. Buenz*, 882 N.E.2d at 529, *quoting Westinghouse*, 70 N.E.2d at 607, (noting that, in construing an indemnity agreement, a court must be wary of adopting a construction of the agreement that "would impose on the [indemnitor] the duty to indemnify against injuries entirely without his control, and such should not be adopted in the absence of clear language in the contract including injuries arising from the negligence of [the indemnities's] own servants").  These principles of strict construction of agreements indemnifying a person for his or her own misconduct apply aptly in this case.

The indemnity provision fails by its terms; Illinois public policy does not allow for contractual indemnity on the facts presented here; and, the indemnity provision does not contain a clear unambiguous statement that the parties agreed to indemnify the other from the others intentional wrongdoing.

### III. CONCLUSION

Connors's motion to dismiss (Doc. 10) is **GRANTED**.  Pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure this action is **DISMISSED with prejudice**.  The Clerk of Court is directed to enter judgment accordingly.  Brennan's motion to compel (Doc. 13) is **DENIED as**

**moot**.

   **IT IS SO ORDERED.**

   DATED:  11/10/10

             s/ *G. Patrick Murphy*
             G. PATRICK MURPHY
             United States District Judge